IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAHAR R.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 504 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, over seven and a half years ago in July of 2016. (Administrative Record (R.) 13). She claimed that she had been disabled since December 3, 2012 (R. 15, 213) due to a back injury, a hip injury, anxiety, depression, and a sleep disorder. (R. 229). Over the next three and a half years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the most recent ALJ's decision that is before the court for review. See 20 C.F.R. §§ 404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) back on January 22, 2020, and the case was fully briefed as of October 7, 2020. [Dkt. ## 10, 16, 18]. More than three years later, the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) on November 29, 2023. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

affirming the decision.

## I.

The plaintiff was working as a translator for the U.S. military in Afghanistan when the jeep she was riding in was attacked. She severely injured her back, but due to the combat conditions, she could not be evacuated from the area for proper medical attention for fifteen days. As a result, she suffered multiple disc protrusions and a herniation in her thoracic spine, and some shallow protrusions in her lumbar spine. And, not surprisingly, given the incident and the conditions she worked under in Afghanistan, she developed psychological issues including PTSD.

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: degenerative disc disease, affective disorder, and anxiety. (R. 16). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered Listings 12.04 and 12.15 for mental impairments. He found that the plaintiff had mild limitations in understanding, remembering, or applying information and in adapting or managing oneself, and moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. (R. 16-17).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to capacity to perform sedentary with "no limitations in her ability to sit throughout an eight-hour workday," subject to umpteen additional limitations:

> The claimant can stand and/or walk for ten continuous minutes, and for a total of two out of eight hours. The claimant needs to alternate her position between sitting, standing, and walking for no more than five minutes out of every half hour. While

>doing so, she would not need to be off task. The claimant can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to noise exceeding that generally encountered in office environments. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, or around exposed flames and unguarded large bodies of water. She should avoid concentrated exposure to unguarded hazardous machinery. The claimant is further limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. She ought not perform work which requires multitasking. She could perform work requiring an average production pace, but is incapable of significantly above average or highly variable production pace work. She ought not perform work which requires significant self-direction. She is further precluded from work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public, which is incidental to her primary job duties. She is unable to work in crowded, hectic environments. The claimant can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks.

(R. 17-18).

The ALJ then reviewed the medical evidence. He noted a December 2012 MRI revealed multiple disc protrusions. Physical exam notes were varied, noting difficulties lifting, mobility issues, significant limitations in daily activities, increased tolerance for activity, and low and mid back pain coming and going. (R. 19-20). As for mental impairments, the ALJ noted that the plaintiff complained of nightmares, flashbacks, loss of sleep, depression, anxiety, diminished appetite, and shaking and crying episodes. She reported irritability, anxiety, hyper vigilance, and hyper reactivity. She had difficulty functioning at home and was getting help from her parents. The ALJ noted that plaintiff's treating psychiatrist reported plaintiff's ability to interact appropriately with the public and maintain socially appropriate behavior was limited but satisfactory. He also made note of one session when plaintiff reported improvement – better sleep, decreased anxiety and

3

irritability, better mood – but that was an isolated instance, and her symptoms worsened thereafter. (R. 20-21).

The ALJ then considered the medical opinion evidence. He assigned great weight to the non-examining state agency opinion that the plaintiff had a moderate limitation in interacting with others as well as in concentrating, persisting, or maintaining pace. The ALJ felt it was supported by the evidence of record. As for the state agency opinion that said that the plaintiff should be limited to light work, the ALJ felt that subsequent evidence showed a limitation to sedentary work is more appropriate. But, because of the opinion's general consistency with the entire record, he nevertheless assigned the opinion great weight. (R. 21).

The ALJ gave great weight to the psychological consultative examination opinion, which said that the plaintiff's social functioning may be impacted by her depression, avoidance of things reminiscent of her time in Afghanistan, and anxiety, and that the plaintiff was able to concentrate with effort. The ALJ said he considered that opinion when finding that plaintiff had a moderate limitation in interacting with others and was moderately limited in concentrating, persisting, or maintaining pace. The ALJ said the opinion was consistent with the record as a whole. (R. 21).

The ALJ gave considerable weight to Dr. Hudoba's opinion that the plaintiff was able to lift ten pounds, had trouble sitting and bending forward, and should not be involved in any strenuous physical activities. The ALJ found that the evidence of record supported the opinion. For the same reason, the ALJ also gave considerable weight to Dr. Hudoba's opinion that the plaintiff could return to sedentary/office type work, but should avoid prolonged positions and activities that worsen her symptoms. (R. 21-22).

The ALJ gave no weight to the May 2018 opinion from Dr. Amer that the plaintiff would be unable to meet competitive standards in most work aptitude categories and that the plaintiff was most capable socially. The ALJ said that, while the opinion stated that the plaintiff would find many demands of work stressful, it offered no further explanation as to why the demands would be stressful or pointed to any support from the record. Similarly, the ALJ said that the plaintiff being absent from work more than four days per month was also not substantiated by additional evidence. The ALJ added that Dr. Amer's opinion was inconsistent with his treatment notes where the plaintiff "reported varied symptoms and improvement." The ALJ gave some weight to Dr. Amer's June 2016 opinion that the plaintiff was not competent to work eight hours a day; that she suffered from flashbacks, depression, and anxiety; and that she was not able to perform her usual job, but could perform work that was calm, at a slow pace, not stressful, and accommodating to her back injury and pain. The ALJ said he gave the opinion some weight because his residual functional capacity finding provided for a less demanding job than her past relevant work. The ALJ rejected the part of the opinion that the plaintiff was incapable of working eight hours per day because it was not supported by evidence, although he did allow that the plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. (R. 22).

Finally, the ALJ gave no weight to the opinion from Dr. Shahbandar that the plaintiff could sit for thirty minutes; stand for thirty minutes at one time; would have to walk every thirty minutes for five minutes; would be able to lift ten pounds occasionally; but could never twist, rarely stoop, crouch, or climb stairs, and never climb ladders. The ALJ characterized this as indicating the plaintiff was capable of sedentary work, but said the physical limitations were "greatly inconsistent with the physical findings in the record." The ALJ also faulted the opinion because the doctor had

5

only seen plaintiff four times. (R. 22).

The ALJ then concluded, relying on the testimony of the vocational expert, that the plaintiff was unable to perform her past work as a quality control inspector (DOT number 750.367-010, SVP 4, light, medium as performed) or as a translator (DOT number 137.267-018, SVP 7, sedentary, heavy as performed). (R. 23). But, based on the vocational expert's testimony, the plaintiff could perform the jobs of assembler (DOT number 734.687-018, SVP 2, sedentary, 100,000 jobs in the national economy), or sorter (DOT number 521.687-086, SVP 2, sedentary, 200,000 jobs in the national economy. (R. 24). Accordingly, the ALJ concluded that the plaintiff was not disabled and not entitled to benefits under the Act. (R. 24).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023); *Bakke*, 62 F.4th at 1066. To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Milhem v. Kijakazi*, 52 F.4th 688, 694 (7th Cir. 2022); *Reynolds v. Kijakazi*,

25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)(". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

But, in the Seventh Circuit, the ALJ also has an obligation to build an "accurate and logical bridge" between the evidence and the result to allow the court to trace the path of the ALJ's reasoning from evidence to conclusion. *Tutwiler*, 87 F.4th at 857; *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."). *But see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,....");

7

*Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash.² But, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).³ As it happens, this is a sketchy opinion

---

² A perfect example is the aforementioned *Jarnutowski.* There, two judges on the panel felt the ALJ had not adequately explained aspects of her reasoning, 748 F.4th at 774-77, while a third judge, dissenting, thought she did. 748 F.4th at 77-79. The Magistrate Judge who reviewed the ALJ's decision at the district court level also felt the ALJ had adequately explained her reasoning. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

³ Prior to Sarchet's "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the

(continued...)

that is just a bit too sketchy.

### III.

The plaintiff has a host of issues with the ALJ's Opinion, covering his treatment of the medical opinion evidence, his evaluation of her mental functional capacity, and his evaluation of her physical functional capacity, and his assessment of her symptoms. Each of those arguments comes with a number of sub-arguments – over two dozen – many of which are only a sentence or two, making the brief a bit of a "kitchen-sink" affair.[4] It's not always the best strategy to present a court

---

[3](...continued)
agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
>
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted).

Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

[4] Indeed, in order to wedge each of these assertions of error into Local Rule 7.1's 15-page limit, the plaintiff had to play just a little "fast and loose" and drop all but a couple of her citations to cases and evidence down into *fifty* footnotes. *Cf. In re Rough Rice Commodity Litig.*, No. 11 C 618, 2012 WL 473091,
(continued...)

with so very many arguments, as the Seventh Circuit has advised over and over again. *See, e.g., United States v. Friedman*, 971 F.3d 700, 709–10 (7th Cir. 2020)("A circumspect approach boosts credibility, while raising every conceivable challenge on appeal can dilute the persuasiveness of plausible arguments."); *Burnam v. Colvin*, 525 F. App'x 461, 464 (7th Cir. 2013)(criticizing the plaintiff for "tak[ing] a kitchen-sink approach, listing nearly a dozen perceived errors in the ALJ's medical summary without focusing on what she views as the most egregious mistakes."); *United States v. Lathrop*, 634 F.3d 931, 936 (7th Cir. 2011)(". . . the equivalent of a laser light show of claims may be so distracting as to disturb our vision and confound our analysis."); *United States v. Pearson*, 340 F.3d 459, 464 (7th Cir. 2003) (the "kitchen-sink" metaphor); *Gagan v. Am. Cablevision, Inc*., 77 F.3d 951, 955 (7th Cir.1996) (advising appellants to use a rifle approach to briefing rather than bringing "their shotgun to Chicago"); *United States v. Levy*, 741 F.2d 915, 924 (7th Cir.1984) ("Again we observe that the shotgun inclusion of issues may be the basis of hitting the target with something but still runs the risk of obscuring the significant issues by dilution."). Briefs like this tend to bog down review and perhaps that has something to do with why this case sat fully briefed for so long before the parties consented to a magistrate judge's jurisdiction.

It's worth remembering that while all that time is passing, the plaintiff has purportedly been unable to work for about a decade. Like any plaintiff in these cases, the plaintiff here may be entitled to benefits or she may not, but either way, ten years is a long wait. It's something none of us should be content with, and perhaps an adjustment here and there could speed up the process.

---

[4](...continued)
at *1 (N.D. Ill. Feb. 9, 2012); *Merix Pharm. Corp. v. EMS Acquisition Corp*., No. 09C5871, 2010 WL 481247, at *1 (N.D. Ill. Feb. 4, 2010); *Leonardo v. Health Care Serv. Corp*., No. 09 C 1588, 2010 WL 317520, at *4 n.1 (N.D. Ill. Jan. 20, 2010). Of course, that's within the letter of the Rule, but perhaps not within the spirit. Even David Foster Wallace may have said that fifty footnotes in fifteen pages was a lot.

**A.**

Be that as it may, an examination of the plaintiff's arguments, reveals that at least a couple hit the mark. There are indeed some significant flaws in the ALJ's analysis, necessitating a remand is necessary. We shall focus on the ALJ's assessment of the medical opinions, beginning with the opinions from plaintiff's treating psychiatrist, Dr. Amer.

Dr. Amer filled out a form from the plaintiff's attorney on May 23, 2018. (R. 764-69). He concluded that plaintiff suffered from "PTSD-MDD-Anxiety," (R. 764), and that she had nightmares, flashbacks, panic episodes, crying, poor sleep, poor appetite, and poor concentration, characterizing these complaints as "clinical findings." (R. 764). In a section labeled "Mental Abilities and Aptitudes Needed to Do Unskilled Work," Dr. Amer checked the "Unable to meet competitive standards" box for the abilities to remember work-like instructions, maintain attention for a two-hour segment, maintain regular attendance, sustain an ordinary routine without special supervision, work in coordination or proximity to others, make simple work-related decisions, complete a normal workday without interruptions from psychological symptoms, perform at a consistent pace, accept instructions criticism, get along with co-workers, respond appropriately to changes in the work setting, and deal with normal work stress. (R. 766). The doctor added that the plaintiff would miss more than four days a month due to her psychological impairments. (R. 768). In other words, the plaintiff was, obviously, disabled.

The ALJ gave Dr. Amer's May 2018 opinion "no weight." Essentially, the ALJ explained that the doctor's findings were not supported by the evidence of record and were inconsistent with the doctor's own treatment notes. (R. 22). Both of these factors are, of course, valid reasons for discounting a treating doctor's opinion. *Baptist*, 74 F.4th at 445; *Leisgang v. Kijakazi*, 72 F.4th 216,

11

221 (7th Cir. 2023); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). But, an ALJ has to offer something beyond a conclusory statement that the evidence doesn't support an opinion. Here, all we have is the ALJ citing to 40 pages of treatment notes – exhibit 19F – concluding that those notes show "varied symptoms and improvement." (R. 22). "[V]aried symptoms and improvement" don't necessarily undermine an opinion that someone can work, and a court is not obliged to thumb through lengthy exhibits looking for something to support what an ALJ says. *See, e.g., Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014)(the court is not required to "scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision."). And, worse, the exhibit the ALJ claims shows "varied symptoms and improvement" actually shows that, session after session, plaintiff's symptoms were "bad," "not so good," "stressed," "stressed," "not good," "not too good," "anxiety," and "the same." (R. 774-800). There were just two sessions when slight improvement was noted. That is not sufficient support for rejecting Dr. Amer's opinion.

  The ALJ gave Dr. Amer's June 2016 opinion "some weight." The ALJ explained that he gave some weight to the opinion because part of it – that plaintiff was not able to do her usual job – matched his own finding that the plaintiff was able to do a less demanding job than her previous work. (R. 22). That's not a great piece of reasoning; it's just confirmation bias. Nowhere do the regulations say that one of the factors an ALJ should look for in a medical opinion is whether it confirms his residual functional capacity finding. It certainly sounds like the ALJ came to a conclusion and then fished around in the record for some support. As for the part of the opinion that said the plaintiff couldn't work through an eight-hour day, the ALJ asserted that it was not supported by evidence. (R. 22). But, the ALJ didn't cite to anything in the record.

The Commissioner argues that the ALJ "discussed the record evidence of plaintiff's treatment in his decision" elsewhere in his Opinion. [Dkt. #16, at 6]. But, the only evidence the ALJ discusses does nothing to undermine Dr. Amer's opinion:

> The claimant presented in January 2015 complaining of nightmares, trouble concentrating, and forgetting things easily. In October 2015, the claimant presented to Virginia McDonough, LCSW, and reported disturbing dreams, loss of sleep, depression, anxiety, diminished appetite, and shaking and crying episodes. The claimant's diagnosis in the report was listed as severe major depression and post-traumatic stress disorder. The claimant denied depression or anxiety at an appointment at Dr. Lee's office.
>
> In December 2016, . . . [t]he claimant reported suffering from episodes of flashbacks, depression, anxiety, and episodes of crying. She stated that she felt worried and scared and had bad dreams of things she had witnessed in Afghanistan. The examiner noted that the claimant's mode was sad and generally depressed. In March 2018, the claimant presented to a psychiatrist and the report indicated that she was having difficulty functioning at home and that her parents were helping her. In May 2018, the claimant followed up with the psychiatrist and reported having crying spells. Dr. Amer's report from May 2018 indicated that the claimant's ability to interact appropriately with the public and maintain socially appropriate behavior was limited but satisfactory.
>
> \* \* \*
>
> The claimant presented in February 2013 to Dr. Alexander for a psychological evaluation and complained of irritability, anxiety, hyper vigilance, and hyper reactivity. In February 2014, the claimant denied depression or anxiety. In November 2014, the claimant complained of depression and anxiety. In February 2016, the claimant presented to Dr. Amer and reported that she was sleeping better, had decreased anxiety and irritability, was in a better mood, and was handling stress better. The claimant, however, indicated that her psychological problems had worsened as of December 2016. At the psychological consultative examination in December 2016, the claimant reported episodes of flashbacks, depression, anxiety, and crying episodes. The claimant reported being worried and scared in her home and that she was working with a psychiatrist and a therapist

(R. 20-21).

So, over the course of three or four years, there was one instance where the plaintiff denied being depressed and one instance where her symptoms improved. The rest is all flashbacks,

13

nightmares, stress, depression, anxiety, shaking and crying spells, none of which undermine an Opinion that the plaintiff can't make it through eight-hour workdays, day after day. Summaries of medical evidence . . . are appropriate," of course. *Grotts*, 27 F.4th at 1278. But when the summary says the opposite of what the ALJ is saying, the Commissioner cannot point to it and claim the ALJ did his job.

### B.

The ALJ's essentially unsupported rejection of Dr. Amer's opinion is reason enough for a remand, but it is perhaps worthwhile to look at another question mark or two. On March 22, 2017, Dr. Hudoba said that the plaintiff "can return to sedentary/office type work, if the modified duties are available or to a new job assignment" and that she "should avoid prolonged positions and activities that worsen or reproduce [her] symptoms." The doctor added that excessive resting or bed rest were discouraged." (R. 759). The ALJ gave considerable weight to Dr. Hudoba's opinion, finding it consistent with the evidence of record. (R. 22). The ALJ also gave considerable weight to Dr. Hudoba's May 22, 2013 opinion. The doctor noted that they had "discussed the return back to work to sedentary/office duties" but added plaintiff should not be involved in strenuous physical activity or lift more than 10-15 pounds. (R. 577). The ALJ felt this opinion was also supported by the evidence of record. (R. 21). Again, that is a valid consideration when according an opinion weight. But, again, the evidence the ALJ points to does not support his conclusion.

When one examines those opinions, it is clear that Dr. Hudoba is predicting a *potential* return to sedentary/office work for the plaintiff, as he repeatedly and consistently conditions plaintiff's ability to perform office type work on her continued improvement after examinations on May 22, 2013 (R. 578), June 19, 2013 (R. 576), July 10, 2013 (R. 574), July 30, 2013 (R. 572), and

14

September 18, 2013 (R. 570). As such, there was no time in 2013 when Dr. Hudoba felt the plaintiff could return to even sedentary work. Indeed, on May 22, 2013, he said the plaintiff could only sit "occasionally" which would clearly rule such work out. If the ALJ really thought Dr. Hudoba's opinion was entitled to considerable weight, he ought to have found plaintiff disabled.

That "occasional sitting" limitation raises a question about the ALJ's residual functional capacity finding. The ALJ said that the plaintiff had "no limitations in her ability to sit throughout an eight-hour workday." (R. 18). That's obviously contrary to the medical opinion evidence, but it also contradicts the ALJ's own finding that plaintiff had to "alternate her position between sitting, standing, and walking for no more than five minutes out of every half hour." (R. 18). That would make sense as plaintiff has multiple bulging or herniated discs in her spine, and walking around every once in a while can relieve the resulting pain. But, it certainly qualifies as a "limitation in her ability to sit throughout an eight-hour workday." Then the ALJ says that during the plaintiff's breaks to relieve her pain, "she would not need to be off task." (R. 18). One supposes that could be possible while the plaintiff was standing, but it's unclear how that would work if she had to walk around to relieve her pain.

## C.

There's a bit more confusion regarding sitting given the ALJ's treatment of Dr. Shahbandar's opinion. The ALJ said he gave "no weight" to it. The doctor said that the plaintiff could only sit or stand for thirty minutes at a time and could only sit or stand for a total of two hours in a day. In the ALJ's defense, when the court sees medical opinions like that, the court always wonders what is going on the rest of the day. Especially as the doctor added that the plaintiff had to walk every thirty minutes for five minutes, but only had to take a break once a day for fifteen minutes. The math very

15

often doesn't add up on these checkbox forms attorneys provide for their clients' physicians. It's one reason why they have limited value. *See Trottier v. Saul*, 809 F. App'x 326, 327 (7th Cir. 2020)(criticizing doctor's opinion expressed by checking boxes rather than explaining how medical evidence supported his conclusions); *Urbanek v. Saul*, 796 F. App'x 910, 915 (7th Cir. 2019)(questioning persuasive value of a checklist opinion); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)(checklist observations are ... "less useful to an ALJ" than a doctor's narrative summary). In any event, for some reason, the ALJ said that Dr. Shahbandar's "opinion provides that the claimant would be capable of sedentary work." (R. 22). That's obviously wrong, and it may even be a typo, because the ALJ also said that the plaintiff's "abilities to sit and stand, are greatly inconsistent with the physical findings in the record." (R. 22). As before, the ALJ provides no citation to evidence in the record. MRIs established that the plaintiff had disc protrusions at multiple levels of her thoracic spine and a herniation at the T11-12 level with extrusion on the right, along with shallow disc protrusions at multiple levels of her lumbar spine. (R. 587, 589, 604-05, 758, 761). Physical therapy notes repeatedly assess tolerance for sitting at thirty minutes at a time. (R. 584, 591, 598). That evidence would seem to support Dr. Shahbandar's opinion. There may be a wealth of evidence to outweigh it, but the ALJ doesn't point to any.

### D.

The plaintiff also argues that the ALJ failed to include moderate limitations in his functional capacity finding, despite finding the opinion of Dr. Snyder, who felt such limitations were appropriate, was entitled to great weight. The doctor was the state agency reviewing psychologist who found that the plaintiff was moderately limited in a number of areas: carrying out detailed instructions, maintaining concentration for extended periods, working with others without being

16

distracted, interacting appropriately with the general public, and making plans independently of others. (R. 117-118). Dr. Snyder then explained that, given these limitations, the plaintiff was capable of performing simple three-step tasks, and performing work that did not require interaction with the general public. As the plaintiff says, the ALJ found this opinion entitled to great weight. (R. 21). As such, the ALJ provided a number of limitations on the plaintiff's residual functional capacity:

> The claimant is further limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. She ought not perform work which requires multitasking. She could perform work requiring an average production pace, but is incapable of significantly above average or highly variable production pace work. She ought not perform work which requires significant self-direction. She is further precluded from work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public, which is incidental to her primary job duties. She is unable to work in crowded, hectic environments. The claimant can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks.

(R. 18). But, the plaintiff argues somehow, all that was not enough.

Contrary to the plaintiff's characterization, clearly, this is not a case where an ALJ translated a list of moderate limitations into a catch-all limitation to "simple, repetitive work" *Cf. Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019), or to "unskilled work" with no "fast-paced production line or tandem tasks." *Cf. DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019). Instead, the ALJ set out a number of limitations, each of which can be traced to those listed in the state agency reviewing psychologist's opinion. And, more importantly, that opinion – an opinion the plaintiff argues the ALJ ought to have followed more closely – says the plaintiff *can work* as long as she's limited to simple three-step tasks and need not interact with the general public. The ALJ's residual functional capacity

17

finding certainly accounted for that, and more. Moreover, the Seventh Circuit has explained that a "moderate limitation" is defined by regulation to mean that functioning in that area is "fair." *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). A "fair" ability to concentrate seems consistent with the limitations the ALJ found, so this might not have been an argument that needed to be added to the pile.

The plaintiff has a couple of other criticisms of the ALJ's mental residual functional capacity finding, but these are picayune. She claims the job of sorter falls outside the ALJ's restriction against concentrated exposure to more than an office-environment noise level because the job has a level of "4." But, she offers no more support for this contention, nor does she show that the job involves *concentrated* exposure to such levels. And, in any event, there were 100,000 other jobs the plaintiff could perform. Plaintiff also claims that the ALJ failed to account for her angry outbursts, but the only evidence of this is plaintiff's testimony that she got angry with her father once for causing her to be late for a doctor's appointment (R. 67-69) and a single treatment note from February 16, 2016, stating that plaintiff said she had a short temper. (R. 724). That's not much and, in any event, the plaintiff is ignoring the ALJ's restrictions against "work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public, which is incidental to her primary job duties . . . work in crowded, hectic environments . . . [and more than] brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks." (R. 17-18). Again, these types of arguments – single-sentence assertions, really – perhaps would have been best left on the cutting room floor. *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018)(perfunctory and undeveloped arguments may be deemed waived); *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013); *Lisa L. v. O'Malley*, No. 20-CV-50395, 2024

18

WL 1013977, at *7 (N.D. Ill. Mar. 8, 2024); *Ricardo M. v. Kijakazi*, No. 19 CV 6802, 2022 WL 4356892, at *5 (N.D. Ill. Sept. 20, 2022); *Andrea K. v. Saul*, No. 19 CV 1682, 2020 WL 4748150, at *9 (N.D. Ill. Aug. 17, 2020).

### E.

All of the foregoing is enough to necessitate a remand, so the plaintiff's remaining arguments need not be addressed. But, at the same time, all of the foregoing is not to say the plaintiff is disabled, of course. Indeed, the plaintiff's attorney seemed to concede at the administrative hearing that, from a physical standpoint, she was able to perform sedentary or even light work. (R. 51). The problems with the ALJ's decision don't necessarily fall into the category of "being wrong," they fall into the category of not "provid[ing] an adequate 'logical bridge' connecting the evidence and h[is] conclusions." *Tutwiler*, 87 F.4th at 857. As we all know, "substantial evidence" review is deferential, and the "logical bridge" requirement is both subjective and flexible. As a result, courts might fill in a blank or two for an ALJ here and there if the record allows and the ALJ's logical gaps are not too wide or too many. But here, there are too many blanks to fill in and too many logical gaps.

### CONCLUSION

For the foregoing reasons the ALJ's decision is reversed and remanded to the Commissioner.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/18/24

19